IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez

Civil Action No. 1:22-cv-00067-RMR-STV

WILLIAM STEVENSON,

    Plaintiff,

v.

JOANA RODRIGUEZ

    Defendant.

## ORDER

On June 15, 2023, Magistrate Judge Scott T. Varholak recommended denying Defendant's Motion for Summary Judgment ("Defendants' Motion"), ECF No. 117. ECF No. 163. Defendant objected to the recommendation, ECF No. 172. The Court has reviewed and considered the Recommendation, the Objection, the record, and the pleadings. After de novo consideration, the Court **ACCEPTS AND ADOPTS IN PART** and respectfully **REJECTS IN PART** the Recommendation.

### I.    BACKGROUND

The factual background of this case is more fully set forth in the Recommendation. *See* ECF No. 163 at 1-7. The Recommendation's statement of facts is incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed R. Civ. P. 72(b). The Court re-states the factual background only to the extent necessary to address Defendant's objections.

Plaintiff is an inmate at the Sterling Correctional Facility ("SCF"). From May 2021 to September 2021, he was assigned as the Offender Care Aide ("OCA") for inmate Michael

Grau—an inmate with extensive medical needs that make it difficult for him to leave his cell. As his OCA, Plaintiff was responsible for assisting Mr. Grau with the minimal activities of daily living, including food tray retrieval and return and the delivery of items as directed by supervising staff. Mr. Grau's request for "[a]ssistance with . . . retrieving and disposing of meal tray, etc." was approved on June 16, 2021. ECF No. 139-1 at 29. According to Plaintiff, he received authorization from three separate SCF officials to pick up to-go trays of food and deliver them to Mr. Grau's cell during mealtimes. Until the incident that resulted in this lawsuit, Plaintiff received positive ratings on his employment evaluation forms for his work as Mr. Grau's OCA. ECF No. 139-1 at 31-36.

Defendant is a food services sergeant who oversees the prisoner feeding process at SCF. According to Defendant, during the relevant time period, no inmates were authorized to take food from prison dining halls. Beginning in July 2021, Plaintiff and Defendant had several interactions during which Plaintiff asked Defendant for a to-go tray for Mr. Grau, and Defendant refused to provide one. On two occasions, Plaintiff complained about Defendant's behavior to other SCF officials, and enlisted their help to retrieve the requested to-go trays from Defendant. During the same time period, Plaintiff and another OCA testified that they saw Defendant provide to-go trays to other OCAs.

The ongoing dispute between Plaintiff and Defendant regarding the to-go trays reached its peak on September 7, 2021, when Plaintiff once again requested a to-go tray for Mr. Grau, and Defendant once again refused to provide Plaintiff with one. The details of the interaction are disputed. Defendant contends that the incident lasted about five minutes, during which Plaintiff "became agitated" and "began to curse and yell" at Defendant, creating a disruption in prisoner feeding. Defendant further contends that

during the incident, Plaintiff improperly disclosed Mr. Grau's medical information to the hall full of inmates. Plaintiff denies that he yelled or used derogatory language, denies disclosing Mr. Grau's medical information, and contends the interaction only lasted one to two minutes. Plaintiff testified that he told Defendant he would file a grievance against her if she didn't stop harassing him, to which Defendant responded "[i]f you do, you won't have to worry about picking up trays anymore." After attempting to enlist the help of another SCF official, Plaintiff sought out Lieutenant Juan Diaz and informed him of the situation. Lieutenant Diaz retrieved a to-go tray and handed it to Plaintiff.

Immediately after the incident, Defendant called the Health Services Administrator, Vicki Nira and explained that Plaintiff had disclosed Mr. Grau's medical information to her and other offenders nearby. Defendant filed an incident report that same day, stating that Plaintiff "demanded that [Defendant] were to make them a to[-]go tray for an offender in the unit," and "became agitated" when told he was not authorized to receive one. It then states that Plaintiff "shared their client[']s information in a chow hall full of offenders" and "began to curse and yell at [Defendant] . . . creating a halt in feeding."

Upon review of the incident report, Ms. Nira requested that Plaintiff be terminated as an OCA. According to Ms. Nira, the decision to terminate Plaintiff was based on the allegations in the incident report, specifically "because [Plaintiff] disclosed his patient's protected medical information to staff and offenders in the dining hall . . . and, for abusing his status as an OCA by attempting to retrieve prohibited to-go trays." On September 14, 2021, Plaintiff was terminated as an OCA.

Plaintiff initiated this lawsuit on January 10, 2022. ECF No. 1. Plaintiff's operative complaint alleges a single § 1983 claim of retaliation in violation of the First Amendment

against Defendant. ECF No. 21. Plaintiff seeks money damages against Defendant in her individual capacity, and declaratory and injunctive relief against Defendant in her official capacity. *Id.*

On February 7, 2023, Defendant moved for summary judgment, asserting qualified immunity as to the individual capacity claim and arguing that Plaintiff cannot establish the causal connection of his retaliation claim because the complained of actions were the result of Plaintiff's violations of prison rules, and Defendant's actions were therefore reasonably related to legitimate penological interests. ECF No. 117. The undersigned referred the Motion to Magistrate Judge Varholak. Plaintiff responded[1], ECF Nos. 138, 139, Defendant replied, ECF No. 150, and Plaintiff filed a surreply, ECF Nos. 160, 161. On June 15, 2023, Magistrate Judge Varholak recommended denying Defendant's motion for summary judgment, ECF No. 163. After seeking and receiving an extension of time to file written objections, ECF Nos. 164, 165, Defendant timely filed her objections to the recommendation on July 20, 2023. ECF No. 172. Plaintiff responded to Defendant's objections on September 26, 2023. ECF No. 199.

## II.     STANDARD OF REVIEW

This Court is required to make a de novo determination of those portions of a magistrate judge's recommendation to which a specific objection has been made, and it

---

[1] Plaintiff, proceeding pro se, titled his response "Plaintiff's Cross-Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment." ECF No. 138. Although Plaintiff requests summary judgment in his favor, he argues there is a genuine dispute of facts and asks the Court to either "grant his Motion for Summary Judgment and order Defendants [sic] into settlement negotiations, or deny Defendant's Motion for Summary Judgment and allow his claims to proceed to trial." *Id.* at 30. Because Plaintiff is pro se and does not appear to be otherwise be making an argument for summary judgment in his favor, the Court construes his Motion as a Response to Defendant's Motion for Summary Judgment. *See Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) ("Because [the plaintiff] appears pro se, we review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys.")

may accept, reject, or modify any or all of the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.").

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996). In the absence of a proper objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate. *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991). When no proper objection is filed, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b) advisory committee's note to 1993 amendment.

## III.   ANALYSIS

Defendant objects to the Recommendation for three reasons. First, Defendant objects to the determination that Plaintiff's informal complaints and threat to file a grievance are clearly established constitutionally protected speech. ECF No. 172 at 3-5. Second, Defendant objects to the conclusion that there is a genuine dispute as to whether she knew about Plaintiff's protected conduct before she filed the incident report. *Id.* at 14. Third, Defendant objects to the finding that there is a genuine dispute as to whether her

decision to file the incident report was reasonably related to legitimate penological interests. *Id.* at 14-16. The Court examines each objection in turn.

### A. Clearly Established Constitutionally Protected Speech

When a defendant asserts a qualified immunity defense—as Defendant has here—"[t]he plaintiff must establish '(1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's conduct[.]'" *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010) (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir.2007) (en banc)). "A right is clearly established when every reasonable official would [understand] that what he is doing violates that right." *Lincoln v. Maketa*, 880 F.3d 533, 537 (10th Cir. 2018) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)) (internal quotation marks omitted). The Supreme Court has held that to be "clearly established," there does not need to be "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna,* 577 U.S. 7, 11 (2015) (citing *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)). "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Id.* (quoting *Ashcroft*, 563 U.S. at 742) (emphasis in original).

It is clearly established that the First Amendment bars retaliation for engaging in protected speech. *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998). The question here is whether it is clearly established that the First Amendment bars retaliation for engaging in Plaintiff's *particular* speech. To answer that question, Magistrate Judge Varholak considered whether a prisoner's "right to make informal complaints and threaten to grieve prison officials" without facing retaliation is clearly established. ECF No. 163 at 17. Defendant argues that this definition is a "high-level generalization of the right at issue"

and insists on a narrower interpretation. ECF No. 172 at 5. Defendant contends the proper inquiry is whether "[Plaintiff's] threat to file a grievance for the denial of a 'to-go' tray" without facing retaliation is clearly established. *Id.* at 7.

Defendant is correct that the "Supreme Court has repeatedly admonished circuit courts 'not to define clearly established law at a high level of generality.'" *See Ullery v. Bradley*, 949 F.3d 1282, 1291 (10th Cir. 2020) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152)). However, *"*[g]eneral statements of the law can clearly establish a right for qualified immunity purposes if they apply with obvious clarity to the specific conduct in question." *Halley v. Huckaby*, 902 F.3d 1136, 1149 (10th Cir. 2018) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (internal quotation marks omitted). The Tenth Circuit uses a "sliding scale to determine when a law is clearly established." *Shroff v. Spellman*, 604 F.3d 1179, 1189–90 (10th Cir. 2010) (quoting *Fogarty v. Gallegos*, 523 F.3d 1147 (10th Cir. 2008)). Under the sliding scale approach, "[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Id*. This Court agrees with Magistrate Judge Varholak that the proper level of specificity in this case is whether the right to make informal complaints and threaten to grieve prison officials without retaliation is clearly established.

It is undisputed that neither the Supreme Court nor the Tenth Circuit has decisively answered the question of whether informal complaints and the threat to file a grievance against a prison official constitutes constitutionally protected speech. The last time the Tenth Circuit addressed the issue was in 2016, when it decided *Faircloth v. Schwartz*, 673 Fed. App'x 791, 792 (10th Cir. 2016) (unpublished)[2]. In that case, which also involved

---

[2] Plaintiff contends that the Court should disregard *Faircloth* because it involved conduct that occurred in 2012, and the decisions from other circuits finding informal grievances to be constitutionally protected post-

a prisoner alleging retaliation for threatening to grieve a prison official, the Tenth Circuit stated, "[w]e are aware of no Supreme Court or Tenth Circuit opinion that the threat to file a grievance is constitutionally protected activity. And there is certainly no consensus of other courts." *Id.* Although unpublished, *Faircloth* supports a finding that the threat to file a grievance, as opposed to the actual filing of a grievance, is not clearly established protected speech. The Tenth Circuit has held that, although an unpublished opinion provides little support that a law is clearly established on a point, "an unpublished decision can be quite relevant in showing that the law was *not* clearly established." *See Grissom v. Roberts*, 902 F.3d 1162, 1168 (10th Cir. 2018) (emphasis in original). Here, *Faircloth* is relevant to show that, as of 2016, the right was not clearly established.

Absent relevant precedent in the Tenth Circuit, the right may be clearly established by persuasive authority in other jurisdictions. *See Ullery v. Bradley*, 949 F.3d 1282, 1292 (10th Cir. 2020) ("Following the Supreme Court's lead, nearly all of our sister circuits, like us, consider both binding circuit precedent and decisions from other circuits in determining whether the law is clearly established.") (collecting cases). The Tenth Circuit has held that "the weight of authority from other circuits may clearly establish the law when at least six other circuits have recognized the right at issue." *Irizarry v. Yehia*, 38 F.4th 1282, 1296 (10th Cir. 2022) (citing *Ullery*, 949 F.3d at 1294). In *Izarry*, the Tenth Circuit held that the right to film police officers performing their duties in public was clearly established because six circuits had determined the right exists, even though the right was not clearly established in the Tenth Circuit. *Id.*

---

date *Faircloth*. ECF No. 199 at 13-14. But Plaintiff does not dispute that *Faircloth* is the last time the Tenth Circuit directly addressed this issue. Regardless, there is not a large enough consensus of persuasive authority from outside the Tenth Circuit post-*Faircloth* to convince the Court that the right to file an informal grievance has since been clearly established.

Here, there is no such weight of authority from other circuits. Magistrate Judge Varholak identified cases in the Third, Sixth, and Ninth Circuits establishing the right to raise informal complaints and threaten to file a grievance against a prison official without facing retaliation. *See* ECF No. 163 at 12-14 (citing *Watson v. Rozum,* 834 F.3d 417, 422-23; *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Jones v. Williams*, 791 F.3d 1023, 1035-36 (9th Cir. 2015); *Entler v. Gregoire*, 872 F.3d 1031, 1039 (9th Cir. 2017)). On the other hand, the Seventh Circuit, in an unpublished 2019 opinion, held that the threat to file a grievance is not clearly established protected speech and found that only the Third Circuit had concluded otherwise. *See Clark v. Reed*, 772 Fed. App'x 353, 355 (7th Cir. 2019) (holding that inmate had not shown that a threat to file a grievance was protected and "[t]o the contrary, 'it seems implausible that a *threat* to file a grievance would itself constitute a First Amendment-protected grievance.'") (quoting *Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009)).  Defendant challenges the applicability of these cases, arguing that all but *Entler* and *Maben* post-date the *Faircloth* decision, and arguing that *Maben* is factually distinctive. ECF No. 172 at 11-13. Regardless, the Court finds that opinions from three other circuits would not be a large enough consensus of persuasive authority from outside the Tenth Circuit to clearly establish the right at issue. For the foregoing reasons, the Court rejects Magistrate Judge Varholak's recommendation to deny summary judgment as to the First Amendment retaliation claim against Defendant in her individual capacity and instead finds that the Defendant is entitled to qualified immunity.

    **B.**    **Retaliatory Motive**

To succeed on a claim of First Amendment retaliation, Plaintiff must show: "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's

actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (quotations omitted). Defendant argues that Plaintiff's First Amendment retaliation claim fails as to the third element because (1) she had no knowledge of Plaintiff's protected activity (i.e., she did not know of his informal complaints and threat to grieve her) and therefore she could not have acted with a retaliatory motive and (2) her decision to file the incident report was reasonably related to legitimate penological interests and therefore not retaliatory. *See* ECF No. 172 at 14.

### 1. Defendant's Knowledge of Plaintiff's Constitutionally Protected Activity

In her objection, Defendant argues "[Plaintiff] has failed to establish the causation element of his First Amendment retaliation claim, because he cannot show that [Defendant] knew of his protected activity." ECF No. 72 at 14. To satisfy the third element (referred to as the "causation element" by Defendant), "Plaintiff must establish that 'but for the retaliatory motive, the incidents to which he refers . . . would not have taken place.'" *Bueno*, 355 F.Supp.3d at 995 (quoting *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)). "Courts in this Circuit have found that close temporal proximity between the exercise of the protected right, and the subsequent disciplinary action, demonstrate that the disciplinary action was substantially motivated by the exercise of the right." *Id.*

The Court agrees with the Recommendation that there is a genuine dispute of material fact regarding the third element. Defendant's assertion that Plaintiff has not put forth evidence that Defendant was aware of his protected conduct is not supported by the

record. Plaintiff has set forth evidence that he complained to prison officials, who then spoke directly with Defendant regarding the issues that Plaintiff had raised. *See* ECF Nos. 138-1 at 88, 96, 139-1 at 65-66. Further, as Magistrate Judge Varholak pointed out, Plaintiff testified that he made a complaint directly to Defendant on September 7, 2022, and Defendant allegedly responded that if Plaintiff filed a grievance, he "wo[uldn't] have to worry about picking up trays anymore." ECF No. 163 at 24-25. The same day that Plaintiff complained and made the threat to file a grievance, Defendant filed the incident report, and Plaintiff was fired a week later. Viewing the record in the light most favorable to Plaintiff, as the non-moving party, the Court agrees with Magistrate Judge Varholak that "the temporal proximity of the filing, combined with Defendant's alleged statement indicating an intent to retaliate against Plaintiff, suffice for a reasonable juror to find that Defendant filed a false incident report in response to Plaintiff's verbal complaint." ECF No. 163 at 24-25. Thus, a genuine dispute of material fact exists as to the third element.

### 2. Conduct Reasonably Related to Legitimate Penological Interests

The Tenth Circuit has held that if the undisputed facts show that a defendant's alleged retaliatory actions were taken based on a legitimate penological interests, then summary judgment in favor of that defendant is appropriate. *See Brooks v. Gabriel*, 738 F.App'x 927, 933-34 (10th Cir. 2018). Magistrate Judge Varholak determined that there is a genuine dispute as to whether Defendant's decision to file the incident report was reasonably related to legitimate penological interests. *See* ECF No. 163 at 17-24. Defendant objects and argues that the undisputed facts show the incident report was filed in response to Plaintiff's violation of prison rules. *See* ECF No. 172 at 15. Plaintiff's alleged rule violations were for: (1) requesting an unauthorized to-go food tray for Mr. Grau, (2)

disclosing Mr. Grau's protected health information in a crowded dining hall, and (3) advocating and creating a facility disruption. *Id.* The Court agrees with the Recommendation that there are genuine disputes of material fact regarding each of these alleged violations.

First, there is a genuine dispute as to whether Mr. Grau was authorized to receive a to-go food tray. Plaintiff provides evidence of authorization, evidence of other OCAs receiving to-go food trays from Defendant, and evidence that he was ultimately provided with the to-go food trays after asking other CDOC supervisors to assist him. *See* ECF No. 138-1 at 56-60, 63, 70, 82, 99; ECF No. 139 at ¶¶ 9, 11; ECF No. 139-1 at 4-12, 29. Defendant counters with evidence that no such authorization exists. *See* ECF No. 117-2 at ¶ 7; 117-4 at ¶ 9. Based on the disputed evidence, a reasonable juror could find that Plaintiff was authorized to collect a to-go food tray for Mr. Grau, and therefore conclude that Defendant did not file the incident report for legitimate penological interests.

Second, the parties dispute whether Plaintiff improperly disclosed Mr. Grau's confidential medical information. As Magistrate Judge Varholak pointed out, Plaintiff denies that he disclosed Mr. Grau's specific medical information, a denial that is supported by the testimony of an inmate who witnessed the exchange. *See* ECF No. 138-1 at 90, 94; ECF No. 139-1 at 65. Further, Defendant does not claim that Plaintiff disclosed Mr. Grau's specific medical conditions, only that he had a patient who required an OCA as a medical accommodation, the patient's name was Grau, and that Grau had specific medical issues which entitled him to a to-go tray. *Id.* According to Plaintiff, Defendant had requested this very information from him when he'd asked for (and been denied) a to-go tray on previous occasions. ECF No. 117-4 at ¶ 7. Presumably, Defendant would not have

asked Plaintiff to disclose his client's name if it was confidential medical information. This undermines Defendant's argument and raises a dispute of material fact regarding whether the disclosure of confidential medical information is the reason Defendant filed the incident report. Again, a reasonable juror could find that Plaintiff did not disclose confidential medical information and conclude that Defendant did not file the incident report for legitimate penological interests.

Finally, the parties dispute whether Plaintiff advocated and created a facility disruption in violation of prison regulations. The facts surrounding the September 7 incident are disputed, including how long the interaction lasted and whether the serving line was disrupted at all. ECF No. 138-1 at 5-6. There is also no evidence of Plaintiff being disciplined for the alleged facility disruption. Indeed, the reasons given for Defendant's termination as OCA were because he disclosed his patient's protected medical information to staff and others in the dining hall, and abused his status as an OCA by attempting to retrieve prohibited to-go trays, not for causing a facility disruption. ECF NO. 117-2 at ¶ 11. Once again, a reasonable juror could find that Plaintiff did not cause a facility disruption in violation of prison regulations and conclude that Defendant did not file the incident report for legitimate penological interests. The genuine disputes of material fact preclude summary judgment on Plaintiff's First Amendment retaliation claim against Defendant in her official capacity.

Reviewing the Defendants' arguments, and considering Defendants' motion for summary judgment *de novo*, the Court finds that Defendant is entitled to qualified immunity on the First Amendment retaliation claim against her in her individual capacity, but denies summary judgment on the First Amendment retaliation claim against

Defendant in her official capacity. For these reasons, and the reasons set forth in the Recommendation, the Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART.**

Accordingly, the Court **ORDERS:**

1. The Recommendation, ECF No. 163, is **ACCEPTED AND ADOPTED IN PART** and respectfully **REJECTED IN PART**;

2. Defendant's Objection to Recommendation of United States Magistrate Judge, ECF No. 172, is **SUSTAINED IN PART** and **OVERRULED IN PART**;

3. Defendants' Motion for Summary Judgment, ECF No. 117, is **GRANTED IN PART** as to the claim against Defendant, in her individual capacity and **DENIED IN PART** as to the claim against Defendant, in her official capacity;

4. Plaintiff's claim against Defendant, in her individual capacity is **DISMISSED WITH PREJUDICE**.

DATED: September 28, 2023

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge